UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| MICHAEL E. BOYD, | ) | Case No.: 11-CV-01644-LHK |
| | ) | |
| Plaintiff, | ) | ORDER GRANTING MOTION FOR |
| v. | ) | SUMMARY JUDGMENT |
| | ) | |
| ACCURAY, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Before the Court is Defendant Accuray, Inc.'s ("Accuray") motion for summary judgment. ECF No. 51.  The motion was heard on May 31, 2012.  Having considered the submissions and arguments of the parties, the Court GRANTS Defendant's motion for the reasons set forth below.

I.       BACKGROUND

A.  Procedural Background

Plaintiff Michael E. Boyd ("Plaintiff") initiated this lawsuit on April 5, 2011.  ECF No. 1. On December 8, 2012, Plaintiff filed the governing first amended complaint ("FAC"), which he further amended by filing an errata, with leave of the Court, on February 24, 2012.  ECF Nos. 27, 37.  The FAC asserts retaliation claims against Accuray under the following five federal statutes: (1) the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207; (2) the False Claims Act ("FCA"), 31 U.S.C. § 3730(h); (3) Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-5; (4) the Occupational Safety and Health Act of 1970 ("OSHA"), 29 U.S.C. §§ 651 *et seq.*; and (5) the Sarbanes-Oxley Act ("SOX"), 18 U.S.C. § 1514A.

1

United States District Court
For the Northern District of California

On December 27, 2011, Accuray filed its answer to the FAC.  ECF No. 30.  On April 12, 2012, the last day to file dispositive motions pursuant to this Court's case management order, Accuray filed its motion for summary judgment.  ECF No. 51.  The original motion contained errors, and Accuray filed an errata the next day to correct these errors.  ECF No. 53.  To accommodate Plaintiff's counsel's health condition, the Court granted Plaintiff three separate extensions to file his opposition to Accuray's motion and continued the hearing on the motion from May 24, 2012, to May 31, 2012.  *See* ECF Nos. 59, 61, 63, 69.  On May 11, 2012, Plaintiff's counsel attempted to file the declaration in support of Plaintiff's opposition and the attached exhibits, but, because of technical difficulties, failed to complete transmission that day.  *See* ECF No. 93.  Plaintiff completed the filing of his opposition and all of the supporting papers on May 12, 2012, one day past the Court's thrice-extended deadline.  ECF No. 91.  The Court reluctantly accepts Plaintiff's untimely filing, over Accuray's objection, given that Plaintiff's counsel appears to have made a good faith effort to comply with the deadline, and in light of the fact that the Court likewise accepted Accuray's errata one day after the deadline for filing dispositive motions.  However, the Court strikes page 26 of Plaintiff's opposition brief because the Court explicitly denied the parties' stipulation requesting additional pages.  ECF No. 41; *see also* Civ. L.R. 7-4(b) (limiting opposition papers to 25 pages of text).  On May 22, 2012, Accuray filed its reply.  ECF No. 101.  On May 29, 2012, Plaintiff filed an errata to the opposition brief.  ECF No. 115.[1]

On May 14, 2012, Plaintiff filed an objection to Accuray's evidence separate from Plaintiff's opposition brief.  ECF No. 92.  Plaintiff's evidentiary objections are DENIED for failure to comply with Civil Local Rule 7-3(a), which requires that "evidentiary and procedural objections to [a] motion . . . be contained within the [opposition] brief" and thus subject to the Civil Local Rule page limitations for opposition briefs.  The Court addresses Accuray's evidentiary objections, properly included in its reply brief, as necessary in the body of the Order.

---

[1] Citations to Accuray's motion for summary judgment ("Mot.") refer to the errata, ECF No. 53. Similarly, citations to Plaintiff's opposition ("Opp'n") refer to the May 29, 2012 errata, ECF No. 115.

Case No.: 11-CV-01644-LHK
ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

### B. Factual Background

Accuray, Inc. is a biomedical technology company that specializes in the production of computerized medical equipment, including its "Cyberknife" product used to treat cancer. Hall Decl. ¶ 2; Boyd Decl. ¶ 1.

Plaintiff, who was hired by Accuray on May 11, 2004, as an "at will" employee, held the position of Senior Manufacturing Engineer. Dadone Decl. Ex. B; Ex. 91.3; Boyd Decl. ¶ 2. Since May 2005, Plaintiff reported to Rus Scott ("Mr. Scott"), the Manager of Manufacturing Engineering. Scott Decl. ¶¶ 1-2; Ex. 92.2; McMahon Decl. Ex. M, at 3. Mr. Scott in turn reported to Anthonios Zografos ("Mr. Zografos"), the Director of Manufacturing from April 2007 until October 1, 2008. *See* McMahon Decl. Ex. B (Strunk Dep. 47:16-20); *id.* Ex. M, at 3; Scott Decl. ¶¶ 1-2; Zografos Decl. ¶ 2. Finally, Mr. Zografos reported to Steven Strunk ("Mr. Strunk"), the Vice President of Manufacturing. McMahon Decl. Ex. M, at 2; Zografos Decl. ¶ 2.[2]

Mr. Scott provided Plaintiff with formal written annual performance evaluations, beginning in July 2005. Scott Decl. ¶ 4, Exs. A-E. These evaluations consistently stated that Plaintiff's performance "need[ed] improvement" or fell "below expectations" in several areas throughout Plaintiff's tenure. *Id.* On August 10, 2007, when Mr. Scott provided Plaintiff his annual performance evaluation (covering the period July 1, 2006, to June 30, 2007), Mr. Scott warned Plaintiff that if Plaintiff's performance did not improve, Plaintiff would be placed on a performance improvement plan. Scott Decl. ¶ 4(c); McMahon Decl. ¶ 2, Ex. A. (Boyd Dep. 54:13-15, Ex. 4). On December 11, 2007, Mr. Scott met with Plaintiff and provided him a half-year review which documented continuing concerns with Plaintiff's performance. Scott Decl. ¶ 7, Ex. F. On or about April 3, 2008, Mr. Scott met with Plaintiff to discuss Plaintiff's unsatisfactory performance. Scott Decl. ¶ 8, Ex. G. On June 4, 2008, Mr. Scott commenced the Corrective Action Process and provided Plaintiff with a Verbal Warning that Plaintiff's performance needed improvement. Scott Decl. ¶ 12, Ex. K. On August 21, 2008, Mr. Scott provided Plaintiff a Written Warning and began meeting "1 on 1" on a weekly basis to identify deficiencies and assist Plaintiff

---

[2] Mr. Strunk was the Director of Manufacturing when Plaintiff was hired in May 2004. *See* Boyd Decl. ¶ 2. In February 2007, Mr. Strunk was promoted to Vice President of Manufacturing, and Mr. Zografos became Director of Manufacturing. Scott Decl. ¶ 2.

Case No.: 11-CV-01644-LHK
ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

in curing them.  Scott Decl. ¶ 15-16, Exs. N, P.  At the May 31, 2012 hearing on the motion, Plaintiff's counsel conceded that the decision to terminate Plaintiff was made on September 10, 2008.  Tr. 40:1; *see also* Scott Decl. ¶ 17, Ex. Q.  Plaintiff was terminated on October 30, 2008. Scott Decl. ¶ 18; Boyd Decl. ¶ 11.

### 1.  Facts Underlying False Claims Act Retaliation Claim: August 2007 Cu28/J18 Cyberknife Incident

Accuray had an upgrade program through which: (1) overseas clients shipped a Cyberknife system to the United States; (2) Accuray upgraded the system's parts and software; and (3) Accuray then shipped the upgraded Cyberknife system back to the overseas client.  *See* Zografos Decl. ¶¶ 7-16; Boyd Decl. ¶ 23.  In the summer of 2007, Plaintiff was responsible for, among other things, documentation for a project upgrading a Cu28/J18 Cyberknife system to be shipped to Japan.  Zografos Decl. ¶ 7; McMahon Decl. Ex. A (Boyd Dep. 34:15-35:11); Scott Decl. ¶ 24. Specifically, before the upgraded product could be shipped, Plaintiff was responsible for executing the Product Release Certificate ("PRC").  *See, e.g.*, Ex. 92.9, at 86:2-10.

An internal dispute arose in the manufacturing department over how to document part numbers on the Cu28/J18 Cyberknife system destined for Japan.  *See* Zografos Decl. ¶¶ 9-14. According to the Zografos Declaration, Plaintiff was insubordinate in resisting the documentation procedure agreed upon by the group, in consultation with Joy Sacmar ("Ms. Sacmar"), Accuray's Senior Manager of Regulatory Affairs.  Zografos Decl. ¶¶ 7-16; *see also* Vagadori Decl. Ex. C. According to Plaintiff's Declaration in opposition to the motion for summary judgment, using the old part number for the pre-upgraded Cyberknife system, PN 020600, rather than the new part number, PN 020495, was inaccurate and could give customs officials a false impression that Accuray was merely processing and returning the same Cyberknife equipment initially shipped into the United States.  Ex. 112.2; Boyd Decl. ¶¶ 26-27; Exs. 13-15; *see also* Vagadori Decl. Ex. D. However, according to Plaintiff's deposition testimony, Plaintiff stated that the wrong part number was a "safety issue" and "created a threat to the patient safety, efficacy [sic] because it was for a different configuration system."  McMahon Decl. Ex. A (Boyd Dep. 26:19-20; 72:20).  According to Plaintiff's deposition testimony, he was threatened to be fired if he did not put the wrong part

4

1    number on the Cu28/J18 system.  McMahon Decl. Ex. A (Boyd Dep. 26:8-11, 23-25).  In any

2    event, Plaintiff objected to signing the PRC with the incorrect part number, but was ordered to, and

3    did so, on August 13, 2007.  Exs. 70.1, 110; *see also* Vagadori Decl. Ex. D.

4          In his deposition, Plaintiff was unable to explain how "Accuray's decision to put a different

5    part number on the release which was different than the one [Plaintiff] believed should go on there

6    . . . resulted in the United States getting less money from Accuray."  McMahon Decl. Ex. A (Boyd

7    Dep. 21:17-24).

8          On August, 13, 2007, Plaintiff filed an "official complaint" regarding the Cu28/J18

9    Cyberknife Incident with Mr. Vagadori, then-Senior Director of Human Resources, against Mr.

10   Scott and Mr. Zografos for creating a "hostile work environment."  Vagadori Decl. Ex. C.  Plaintiff

11   also complained about changed work duties following the Cu28/J18 Cyberknife Incident.

12   McMahon Decl. Ex. A (Boyd Dep. 27:21-23, 70-75).  For example, Plaintiff was removed from all

13   further responsibilities in connection with upgrading similar Cyberknife systems.  Ex. 15, 112;

14   Boyd Decl. ¶ 32; *see also* Zografos Decl. Ex. B, at 3; Vagadori Decl. Ex. D; McMahon Decl. Ex. A

15   (Boyd Dep. 71:5:7 ("I have essentially been confined to my cube and removed from working on

16   the next Japan upgrade system CO33/J[21]").

### 2.   Facts Underlying Title VII Retaliation Claim: Outsourcing of Stockroom Employees

19         On September 25, 2007, Plaintiff emailed Mr. Vagadori to file a complaint regarding

20   "possible discrimination if termination of employment of protected individuals occurs."  Vagadori

21   Decl. ¶¶ 1, 12 & Ex. G.  Plaintiff's complaint was based on rumors he heard that Accuray was

22   "going to let all the Mexicans go" and that Accuray was "outsourcing the stock room."  *Id.* Ex. G.

23   Plaintiff expressed concern that Accuray's project to outsource stockroom employees could be a

24   violation of Title VII and compromise Accuray's ability to obtain funding from the Veterans

25   Administration.  *See id.*

26         On or about October 2, 2007, while in a break-room, Plaintiff commented "that the

27   Company was planning to lay off all the Mexicans."  Zografos Decl. ¶ 18; Vagadori Decl. ¶ 17.

28   On November 1, 2007, Mr. Vagadori admonished Plaintiff "about his inaccurate racial comment in

United States District Court
For the Northern District of California

5

United States District Court
For the Northern District of California

1  a public area regarding the confidential outsourcing of the stockroom employees [sic]."  Vagadori

2  Decl. ¶ 19.

3       On September 10, 2008, Plaintiff filed a complaint with the EEOC alleging that he believed

4  that the "termination of Mexican stockroom employees was in fact discriminatory," and he had

5  been retaliated against for complaining about their termination.  McMahon Decl. Ex. J.

6  Specifically, Plaintiff alleged that after his September 25, 2007 complaint to Accuray, Mr. Scott

7  "over scrutinized [Plaintiff's] work"; "Mr. Scott has given [Plaintiff] a negative performance

8  evaluation"; Mr. Scott gave Plaintiff a "performance warning" in May and August 2008; and

9  Plaintiff was threatened that if he "did not improve [his] work performance that [Accuray] would

10  terminate [Plaintiff's] employment."  *Id.*

11       On November 7, 2008, Plaintiff filed a second EEOC complaint.  McMahon Decl. Ex. K.

12  Plaintiff claimed that subsequent to his September 10, 2008 EEOC complaint, Accuray retaliated

13  against Plaintiff by: (1) disciplining him; (2) subjecting him to different terms and conditions of

14  employment; and (3) terminating him.  *Id.*  Specifically, Plaintiff complained that: (1) in September

15  2008, Mr. Scott "wrote [Plaintiff] up alleging poor performance"; (2) in October 2008, Mr. Scott

16  gave Plaintiff a "negative performance review" and denied a bonus and a raise; and (3) on October

17  30, 2008, Plaintiff was terminated.

18       As to both EEOC complaints, the EEOC determined that "[b]ased upon its investigation,

19  the EEOC is unable to conclude that the information obtained establishes violations of the

20  statutes."  McMahon Decl. Ex. A (Boyd Dep. Exs. 37, 39).

21      **3.  Facts Underlying Sarbanes-Oxley Claim: Camera Detectors Inventory**

22       On September 19, 2008, Plaintiff made a complaint to the Securities and Exchange

23  Commission ("SEC") that Accuray was "taking returned defective cameras, retesting them under a

24  changed requirement from what they were shipped out on, and put back in stock as good cameras

25  and reported as valid, usable inventory when it was not, when it . . . actually should have been

26  scrap material."  McMahon Decl. Ex. A (Boyd Dep. 22:5-9; 199:11-13; 206:2-8).  Plaintiff testified

27  that he did not inform Accuray's Human Resources Department about his complaint to the SEC.

28  *Id.* Ex. A (Boyd Dep. 205:4-9); *see also id.* Ex. Ex. B (Strunk Dep. 28:2-5, 43:11-13); Hall Decl. ¶

6

United States District Court
For the Northern District of California

1    12.  The only persons Plaintiff informed about his SEC complaint were Chris McKinley, the

2    supervisor of the shipping/receiving department; Alicia Alvarez, an employee in the shipping

3    receiving department; and Peter Nowakowski, a production manager.  *Id.* Ex. A (Boyd Dep.

4    205:11-20); *id.* Ex. M, at 3.  Ms. McKinley did not have supervisory authority over Plaintiff, and

5    Ms. McKinley testified that she did not tell anyone about Plaintiff's complaint to the SEC.  *Id.* Ex.

6    C (McKinley Dep. 27-28), Ex. M.  Mr. Nowakowski and Ms. Alvarez also did not have

7    supervisory authority over Plaintiff.  McMahon Decl. ¶14, Ex. M.

8    **II.      LEGAL STANDARD**

9         Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary

10   judgment if the movant shows that there is no genuine dispute as to any material fact and the

11   movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Material facts are those

12   that may affect the outcome of the case.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

13   (1986).  A dispute as to a material fact is "genuine" if the evidence is such that "a reasonable jury

14   could return a verdict for the nonmoving party."  *See id.*  In determining whether there is a material

15   factual dispute, the Court considers admissible evidence in "depositions, documents, electronically

16   stored information, affidavits or declarations, stipulations (including those made for purposes of the

17   motion only), admissions, interrogatory answers, or other materials."  Fed. R. Civ. P. 56(c).  The

18   Court must view the evidence in the light most favorable to the non-moving party and draw all

19   justifiable inferences in the non-moving party's favor.  *Anderson*, 477 U.S. at 255.

20        The moving party bears the initial responsibility for informing the district court of the basis

21   for its motion and identifying those portions of the evidentiary record that it contends demonstrate

22   the absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323

23   (1986).

24        A party opposing a properly supported motion for summary judgment "may not rest upon

25   the mere allegations or denials of [that] party's pleading, but . . . must set forth specific facts

26   showing that there is a genuine issue for trial."  *See also Anderson*, 477 U.S. at 250.  The non-

27   moving party need not show the issue will be resolved conclusively in its favor.  *See id.* at 248-49.

28   All that is necessary is submission of sufficient evidence to create a material factual dispute,

thereby requiring a jury or judge to resolve the parties' differing versions at trial.  *See id.*  A non-moving party's "conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact."  *Nelson v. City of Davis*, 571 F.3d 924, 929 n.2 (9th Cir. 2009) (quoting *F.T.C. v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997)).

### III.    ANALYSIS

As an initial matter, the Court notes that at the May 31, 2012 hearing on the instant motion Plaintiff's counsel conceded that Defendant is entitled to summary judgment as to Plaintiff's retaliation claims under the FLSA and OSHA.  Tr. 2:23-3:1; *see also* Opp'n 24.  Accordingly, Accuray's motion is GRANTED as to these two claims.  Therefore the Court limits its analysis to Plaintiff's remaining retaliation claims under the FCA, Title VII, and SOX and addresses each of these claims in turn.

### A. Fair Claims Act Retaliation Claim

Accuray argues that it is entitled to summary judgment as to Plaintiff's FCA claim because: (1) Plaintiff did not engage in activity protected by the FCA; (2) there is no evidence that Accuray had knowledge that Plaintiff was engaging in activity protected by the FCA; and (3) Plaintiff's claim is time-barred.  Plaintiff argues that the August 2007 Cu28/J18 Cyberknife incident presents "a simple and plain scheme to defraud the government of customs duties."  Opp'n 15.  Accuray responds that: (1) there is no evidence that a customs duty applied to the Cyberknife shipment at issue; (2) there is no evidence that Plaintiff complained about the customs implications of the product numbering of the Cyberknife shipment; and (3) there is no evidence that Plaintiff was investigating, initiating, or assisting in an FCA suit against Accuray.  As explained below, the Court agrees with Accuray.

"Congress added 31 U.S.C. § 3730(h) to the FCA in 1986 to protect 'whistleblowers,' those who come forward with evidence their employer is defrauding the government, from retaliation by their employer."  *U.S. ex rel. Hopper v. Anton*, 91 F.3d 1261, 1269 (9th Cir. 1996).  The FCA protects employees from being "discharged, demoted, . . . or in any other manner discriminated against in the terms and conditions of employment . . . because of lawful acts done by the

United States District Court
For the Northern District of California

1    employee . . . in furtherance of an [FCA] action . . . , including investigation for, initiation of,

2    testimony for, or assistance in an [FCA] action . . . ."  31 U.S.C. § 3730(h).

3        An FCA retaliation claim requires proof of three elements: "1) the employee must have

4    been engaging in conduct protected under the Act; 2) the employer must have known that the

5    employee was engaging in such conduct; and 3) the employer must have discriminated against the

6    employee because of her protected conduct."  *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*,

7    637 F.3d 1047, 1060 (9th Cir. 2011).  The 3-year statute of limitations for a retaliation claim under

8    the FCA begins to run when the retaliation actually occurs.  31 U.S.C. § 3730(h)(3); *Graham Cnty.*

9    *Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 545 U.S. 409, 419-420 (2005).

10       Plaintiff has not pointed to evidence supporting the claim that he was engaging in conduct

11   protected by the FCA.  As the Ninth Circuit has stated, to be protected by the FCA, a "plaintiff

12   must be investigating matters which are calculated, or reasonably could lead, to a viable FCA

13   action."  *Moore v. Cal. Inst. of Tech. Jet Propulsion Lab.*, 275 F.3d 838, 845 (9th Cir. 2002) (citing

14   *Hopper*, 91 F.3d at 1269).  "[A]n employee engages in protected activity where (1) the employee in

15   good faith believes, and (2) a reasonable employee in the same or similar circumstances might

16   believe, that the employer is possibly committing fraud against the government."  *Id.*

17       Plaintiff's alleged protected activity underlying his FCA claim is the August 2007 Cu28/J18

18   Cyberknife incident.  There is no evidence that the upgrade project on the Cu28/J18 system

19   involved a contract with the United States government.  In fact, Plaintiff admitted that he cannot

20   explain how any of the events that transpired with regard to the Cu28/J18 Cyberknife upgrade

21   resulted in the U.S. government obtaining any less money from Accuray.  *See* McMahon Decl. Ex.

22   A (Boyd Dep. 21:19-24).  Here, Plaintiff's alleged protected activity of protesting the use of an

23   incorrect product number was directed toward promoting regulatory compliance and patient safety.

24   *See, e.g.*, McMahon Decl. Ex. A (Boyd Dep. 26:16-22 ("I told them if they put that part number,

25   that I shouldn't sign it because it was the wrong part number . . . it created a threat to patient

26   safety.")).  Indeed, Plaintiff considered Mr. Scott and Mr. Zografos's retaliation to be a result of

United States District Court
For the Northern District of California

9

Case No.: 11-CV-01644-LHK
ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

"trying to do my job to comply with FDA regulations."  McMahon Decl. Ex. F, at 1; *see also id.*
Ex. A (Boyd Dep. 27:7-19 (testifying that Plaintiff complained to FDA).[3]

The Ninth Circuit's decision in *United States ex rel. Hopper v. Anton*, controls here and
requires granting summary judgment in favor of Defendant on Plaintiff's FCA claim.  In *Hopper*,
the Ninth Circuit reversed a denial of summary judgment where:

> The entire record fail[ed] to demonstrate that [the plaintiff] was engaged in
> 'furtherance of an action' under the FCA.  Rather, the record quite clearly show[ed]
> [the plaintiff] was merely attempting to get the School District to comply with
> Federal and State regulations.  Her numerous written complaints, seventy letters and
> over fifty telephone calls were all directed toward this end.  She was not trying to
> recover money for the government; she was attempting to get classroom teachers
> into IEP evaluation sessions.  She was not investigating fraud.  She was not
> whistleblowing as envisioned in the paradigm qui tam FCA action. . . .  Correcting
> regulatory problems may be a laudable goal, but one not actionable under the FCA
> in the absence of actual fraudulent conduct.  Her FCA allegations were not
> sufficient to pass summary judgment muster.  Her investigatory activity did not
> have any nexus to the FCA."

*Hopper*, 91 F.3d at 1269.  Likewise, here the record quite clearly shows that Plaintiff was merely
attempting to get Accuray to comply with FDA's "traceability" regulatory requirement and was
concerned about patient safety, not fraud against the U.S. government.  *See* McMahon Decl. Ex. A
(Boyd Dep. 27:7-17 (describing Plaintiff's complaint to the FDA about the product release); *id.*
26:16-22 (testifying about concern regarding patient safety); *id* 75:11-20 (describing "traceability"
regulatory requirements.").  Accordingly, the evidence in support of Plaintiff's FCA claim is
insufficient to "pass summary judgment muster."  *Hopper*, 91 F.3d at 1269.

Plaintiff argues in his opposition, for the first time, that he was engaging in protected
activity because he believed that Accuray's use of the incorrect product number in the August 2007
Cu28/J18 Cyberknife incident constituted "a simple and plain scheme to defraud the government of
customs duties."  Opp'n 16.  However, Plaintiff points to no evidence other than his own self-
serving declaration in support of his opposition to buttress his new theory that he was engaging in
protected activity by the FCA.  Whereas Plaintiff's deposition testimony only contained evidence

---

[3] The Court expresses no opinion on whether Plaintiff's allegations, if true, would prove a violation
of FDA regulations.

Case No.: 11-CV-01644-LHK
ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

that Plaintiff's concern was patient safety and compliance with FDA regulations, Plaintiff's declaration adds that use of the wrong product number "was problematical" because it could "give a false impression to customs officials that Accuray was merely processing and returning the same Cyberknife equipment initially shipped into USA." Boyd Decl. ¶ 27. Although Plaintiff cites Exhibit 92.9, at 124:11-125:23, to support his allegation of customs fraud, the Court is unable to find any such support in Exhibit 92.9. *See* Opp'n 5. Plaintiff also cites Exhibits 70.1 and 110 to support the proposition that Plaintiff attended a meeting where he "repeated his earlier protests that [using the wrong part number] meant misleading both the customer, with patient safety implications, and customs officials." *See* Opp'n 6. Again, neither of these exhibits supports the factual allegation that the Cu28/J18 Cyberknife incident defrauded the U.S. government or that it was reasonable for Plaintiff to believe that Accuray was committing fraud against the U.S. government. Plaintiff's citation to Exhibit 15 is also unhelpful, as this email, which mentions the FDA but makes no mention of fraud against the U.S. government, provides further evidentiary support that Plaintiff was only trying to promote compliance with FDA regulations. Opp'n 7. Finally, Plaintiff's citation to Exhibit 93-5, Mr. Hall's statement that "the different part number" mattered because "when you import into another country, each part number needs to be approved for both export and import," is by Plaintiff's counsel's own admission too "oblique[]" to suggest that Plaintiff had a good faith belief that Accuray was committing customs fraud against the U.S. government.[4] Opp'n 17. Moreover, as Accuray pointed out at the May 31, 2012 hearing, Mr. Hall's acknowledgement of the export/import implications of incorrectly numbering a product in a 2012 deposition, has no bearing on whether Plaintiff had a good faith belief that Accuray was defrauding the U.S. government in 2007. Nor did Accuray admit, as Plaintiff argues, that Plaintiff engaged in activity protected by the FCA. *See* Opp'n 18 (citing Ex. 37.12, 37.14-15).

Even if any of Plaintiff's cited exhibits actually supported Plaintiff's allegation that he engaged in activity protected by the FCA, Plaintiff fails to explain the discrepancy with his earlier admission, in his deposition, that he could not explain how any of the events that transpired with

---

[4] The Court expresses no opinion on whether Plaintiff's allegations, if true, would prove a violation of the customs laws or regulations.

Case No.: 11-CV-01644-LHK
ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

regard to the Cu28/J18 Cyberknife upgrade resulted in the U.S. government getting any less money from Accuray.  *See* McMahon Decl. Ex. A (Boyd Dep. 21:19-24).  A party "cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn statement."  *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806 (1999); *see also Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262 (9th Cir. 1991).  Plaintiff's failure to provide any explanation for the discrepancy leads this Court to conclude that Plaintiff's allegations in his declaration regarding customs fraud are a "sham."  *Kennedy*, 952 F.2d at 267.

There is no evidence that Plaintiff informed Accuray that he was investigating any customs fraud against the U.S. government in regard to the August 2007 Cu28/J18 Cyberknife incident. Plaintiff cites 21 exhibits for the proposition that Plaintiff's complaints about "customs fraud" were known during Plaintiff's employment to Hillberry, Dadone, Zografos, Strunk, Hall, and Vagadori, but none of these exhibits appears to support this proposition.  *See* Opp'n 10.  Moreover, Plaintiff does not quote any specific language contained in these 21 exhibits suggesting that Accuray had knowledge of Plaintiff's protected activity.  Accordingly, Plaintiff also fails to meet his burden to establish a material factual dispute as to Accuray's knowledge of Plaintiff's alleged protected activity, another necessary element of an FCA claim.  *Cafasso*, 637 F.3d at 1060.

In summary, Plaintiff has failed to raise a material factual dispute as to two necessary elements of an FCA claim: (1) Plaintiff's engagement in activity protected by the FCA; and (2) Accuray's knowledge of Plaintiff's protected activity.[5]  Accordingly, Defendant's motion for summary judgment as to Plaintiff's FCA retaliation claim is GRANTED.

## B.  Title VII Retaliation Claim

Under Title VII, it is "an unlawful employment practice for an employer . . .  to discharge any individual . . . because of such individual's race, color . . .  or national origin."  42 U.S.C. § 2000e-2(a).  Title VII also prohibits retaliation against an employee for opposing any unlawful employment practice under Title VII, or for making a charge or otherwise participating in a Title

---

[5] The Court need not reach Accuray's argument that Plaintiff's FCA claim is time-barred, an argument that Accuray appears to have retreated from in its reply brief.

Case No.: 11-CV-01644-LHK
ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

1  VII proceeding.  42 U.S.C. § 2000e-3(a); *see also Nilsson v. City of Mesa*, 503 F.3d 947, 953 (9th

2  Cir. 2007).

3          Title VII retaliation claims follow the same burden-shifting framework described in

4  *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973).  *See Dawson v. Entek Int'l*, 630 F.3d

5  928, 936 (9th Cir. 2011).  "To establish a prima facie case, the employee must show that he

6  engaged in a protected activity, he was subsequently subjected to an adverse employment action,

7  and that a causal link exists between the two."  *Id.* (citing *Jordan v. Clark*, 847 F.2d 1368, 1376

8  (9th Cir. 1988)).  "An adverse employment action is one that 'is reasonably likely to deter

9  employees from engaging in protected activity.'"  *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103,

10  1125 n.19 (9th Cir. 2004) (citing *Ray v. Henderson*, 217 F.3d 1234, 1243 (9th Cir. 2000)); *see also*

11  *Lyons v. England*, 307 F.3d 1092, 1118 (9th Cir. 2002) (noting that reduction of responsibilities;

12  imposition of additional burdensome tasks; transfers of job duties; and undeserved performance

13  ratings are examples of adverse employment decisions) (citations omitted).  "The causal link can

14  be inferred from circumstantial evidence such as the employer's knowledge of the protected

15  activities and the proximity in time between the protected activity and the adverse action."

16  *Dawson*, 630 F.3d at 936.

17          "If a plaintiff establishes a prima facie case of unlawful retaliation, the burden shifts to the

18  defendant employer to offer evidence that the challenged action was taken for legitimate, non-

19  discriminatory reasons."  *Id.* (citing *Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 917 (9th Cir.

20  1996)).  "If the employer provides a legitimate explanation for the challenged decision, the plaintiff

21  must show that the defendant's explanation is merely a pretext for impermissible discrimination."

22  *Id.* (citing *Ray*, 217 F.3d at 1240).  A plaintiff can demonstrate that a defendant's proffered reasons

23  for a challenged action are pretextual "'either directly by persuading the court that [a retaliatory]

24  reason [for the decision] more likely motivated the employer or indirectly by showing that the

25  employer's proffered explanation is unworthy of credence.'"  *Hernandez v. Spacelabs Med. Inc.*,

26  343 F.3d 1107, 1115 (9th Cir. 2003) (quoting *Burdine*, 450 U.S. at 256) (some alterations

27  changed).

28

13

Here, Plaintiff argues that: (1) he first engaged in activity protected by Title VII on September 25, 2007, when he complained about the plan to outsource stock room employees; (2) he was first subjected to an adverse employment action because of his protected activity under Title VII when he received a negative review in December 2007; and (3) that causation can be inferred from circumstantial evidence such as Accuray's knowledge of the protected activity and the proximity in time between the protected activity and the adverse action. Accuray argues that it is entitled to summary judgment on Plaintiff's Title VII claim because Plaintiff fails to establish a prima facie case and, even if he could establish a prima facie case, Accuray gave Plaintiff negative performance reviews and ultimately terminated Plaintiff for a legitimate, non-discriminatory reason: poor work performance. Even assuming Plaintiff can establish a prima facie case,[6] as discussed below, the Court agrees that Defendant is entitled to summary judgment because Plaintiff has failed to raise a material factual dispute as to whether Defendant's proffered non-discriminatory reason was pretextual.

### 1.     Accuray's Proffered Non-Discriminatory Reason

Accuray has submitted evidence supporting its contention that Plaintiff received negative reviews and was terminated due to poor work performance, rather than in retaliation for Plaintiff's September 25, 2007 activity protected under Title VII. As discussed above, Accuray's documentation of Plaintiff's deficient performance dates as far back as his first annual performance review in 2005. Scott Dec. ¶ 4(a), Ex. A (noting that for the period of July 1, 2004, to June 30, 2005, Plaintiff's verbal communication needed improvement). Plaintiff's subsequent annual performance reviews consistently stated that Plaintiff's performance "need[ed] improvement" or fell "below expectations" in several areas throughout Plaintiff's tenure. Scott Decl. Exs. B-F. Specifically, these reviews noted that Plaintiff's performance was deficient in his "verbal communication skills"; "focus"; meeting etiquette; interpersonal skills; attention to detail; and timeliness of deliverables. *See id.* On August 10, 2007, when Mr. Scott provided Plaintiff his

---

[6] The Court need not reach whether Plaintiff establishes a prima facie case, because Plaintiff fails to raise a material factual dispute as to pretext. *See Vasquez v. Cty. of L.A.*, 349 F.3d 634, 642 (9th Cir. 2003) ("even assuming that [plaintiff] could establish his prima facie case, his claim would fail because he could not show that [defendant's] reason was a pretext for discriminatory intent.")

Case No.: 11-CV-01644-LHK
ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

annual performance evaluation (covering the period July 1, 2006, to June 30, 2007), Mr. Scott
warned Plaintiff that if Plaintiff's performance did not improve, Plaintiff would be placed on a
performance improvement plan.  Scott Decl. ¶ 4(c); McMahon Decl. ¶ 2, Ex. A. (Boyd Dep. 54:13-
15, Ex. 4).  On December 11, 2007, Mr. Scott met with Plaintiff and provided him a half-year
review which documented continuing concerns with Plaintiff's performance.  Scott Decl. ¶ 7, Ex.
F.  On or about April 3, 2008, Mr. Scott met with Plaintiff to discuss Plaintiff's unsatisfactory
performance.  Scott Decl. ¶ 8, Ex. G.  On June 4, 2008, Mr. Scott commenced the Corrective
Action Process and provided Plaintiff with a Verbal Warning that Plaintiff's performance needed
improvement.  Scott Decl. ¶ 12, Ex. K.  On August 21, 2008, Mr. Scott provided Plaintiff a Written
Warning and began meeting "1 on 1" on a weekly basis to identify deficiencies and assist Plaintiff
in curing them.  Scott Decl. ¶ 15-16, Exs. N, P.  At the May 31, 2012 hearing on the motion,
Plaintiff's counsel conceded that the decision to terminate Plaintiff was made on September 10,
2008, when Mr. Scott had completed a final draft of a formal "Final Warning" for Plaintiff.  Tr.
40:1; *see also* Scott Decl. ¶ 17, Ex. Q.  Plaintiff's activity protected under Title VII occurred on
September 25, 2007.  Plaintiff was terminated on October 30, 2008.  Scott Decl. ¶ 18; Boyd Decl. ¶
11.

> In summary, Accuray has submitted ample evidence that poor performance provided a
legitimate, non-discriminatory reason for terminating Plaintiff.  Accordingly, the burden shifts to
Plaintiff to adduce evidence that Accuray's justifications for its adverse employment actions
against Plaintiff were merely a pretext for retaliation.  *See Stegall*, 350 F.3d at 1066.

### 2.      Pretext

> Plaintiff fails to show that Accuray's proffered reasons are pretextual.  As the Ninth Circuit
has held, "There is no genuine issue of material fact regarding pretext" where a plaintiff's "poor
performance was documented before he engaged in protected activity, and [plaintiff] was informed
before engaging in protected activity that he would receive a substandard evaluation absent an
improvement in his performance."  *Hobdy v. L.A. Unified Sch. Dist.*, 386 F. App'x 722, 724 (9th
Cir. 2010) (citing *Manatt v. Bank of Am., N.A.*, 339 F.3d 792, 803-04 (9th Cir. 2003)).

Case No.: 11-CV-01644-LHK
ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1    As discussed above, Accuray has submitted ample evidence that Plaintiff's poor

2  performance predated Plaintiff's activity protected under Title VII, which took place on September

3  25, 2007.  For example, Plaintiff's annual performance reviews from 2005 through June 2007, all

4  showed that Plaintiff's performance "need[ed] improvement" in several areas.  Scott Decl. Exs. A-

5  D.  On August 10, 2007, when Mr. Scott provided Plaintiff his annual performance evaluation, Mr.

6  Scott warned Plaintiff that if Plaintiff's performance did not improve, Plaintiff would be placed on

7  a performance improvement plan.  Scott Decl. ¶ 4(c); McMahon Decl. ¶ 2, Ex. A. (Boyd Dep.

8  54:13-15, Ex. 4).  Accordingly, because Plaintiff's "poor performance was documented before he

9  engaged in protected activity, and [Plaintiff] was informed before engaging in protected activity

10  that he would receive a substandard evaluation absent an improvement in his performance," there

11  is "no genuine issue of material fact regarding pretext."  *Hobdy*, 386 F. App'x at 724.

12    Plaintiff's reliance on *Van Asdale v. International Game Technology*, 577 F.3d 989, 1004

13  (9th Cir. 2009), is unavailing.  Plaintiff cites *Van Asdale* for the proposition that whether Plaintiff

14  was terminated for poor performance cannot be determined on summary judgment.  In *Van Asdale*,

15  unlike here, however, the evidence of plaintiff's poor performance was "in tension with other

16  contemporaneous evidence of [the plaintiff's] strong performance."  *Id.* at 1004.  Here, by contrast,

17  Plaintiff has not cited evidence of strong performance in tension with Plaintiff's annual

18  evaluations.

19    Furthermore, Plaintiff's own brief concedes that any alleged adverse employment actions,

20  such as undeserved performance evaluations, began for non-discriminatory reasons before Plaintiff

21  engaged in activity protected under Title VII on September 25, 2007: "The move to terminate

22  Plaintiff began with Zografos and his objections to Plaintiff's willingness to report safety and

23  regulatory problems, and other protected forms of complaints as befitted the duties of his job.

24  Zografos almost immediately, after his hiring in April 2007, commenced efforts to put Plaintiff on

25  [sic] termination track, surreptitiously training Plaintiff's 'replacement' and discussing it behind his

26  back *long before doing so with Plaintiff*—i.e. when he was angry over Plaintiff not doing his

27  unlawful bidding with the Cyberknife J18."  Opp'n 12-13 (internal citations to the record omitted;

28  emphasis added).  Given that Mr. Zografos became angry over the J18 Cyberknife system in

16

Case No.: 11-CV-01644-LHK
ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

1   August 2007, this cited passage from Plaintiff's opposition undermines any claim that Plaintiff

2   suffered adverse employment action, such as termination, as a result of activity protected under

3   Title VII on or after September 25, 2007.  Furthermore, Plaintiff cites Exhibit 112, which indicates

4   that Mr. Zografos recommended placing Plaintiff on a Performance Improvement Plan in response

5   to Plaintiff's insubordination as early as August 14, 2007, which, as Plaintiff's counsel put it,

6   "means the employee is already on his way out, as sure as gravity."  Opp'n 22 (citing Ex. 90.25-

7   26).[7]

8        Moreover, Plaintiff's opposition brief does not cite any facts, let alone sufficient facts to

9   raise a genuine factual issue as to pretext.  Plaintiff merely states, "the preceding Section III.B

10  reflects the same evidence can and should be applied for the pretext analysis, and is incorporated

11  herein by this reference."  Opp'n 24.  This is woefully insufficient to carry Plaintiff's burden to

12  raise a material factual dispute in order to survive Defendant's motion for summary judgment.  *See*

13  *Forsberg v. Pac. N.W. Bell Tel. Co.*, 840 F.2d 1409, 1417-18 (9th Cir. 1998) ("The district court is

14  not required to comb the record to find some reason to deny a motion for summary judgment.").

15       For the foregoing reasons, Plaintiff fails to "adduce a triable issue of fact that [Accuray's]

16  justifications for" its adverse employment actions against Plaintiff were "merely a pretext" for

17  retaliation.  *See Stegall*, 350 F.3d at 1066.  Accordingly, Accuray's motion for summary judgment

18  as to Plaintiff's Title VII retaliation claim is GRANTED.

19                    **C.  Retaliation Claim Under Sarbanes-Oxley Act**

20       Accuray argues that it is entitled summary judgment on Plaintiff's retaliation claim under

21  SOX because: (1) Plaintiff's complaints did not constitute protected activity; (2) no person with

22  supervisory authority was made aware of Plaintiff's SEC complaint; and (3) Plaintiff's SEC

23  complaint was not a contributing factor to any unfavorable employment action Plaintiff suffered.

24  Mot. 21-24.  Plaintiff argues that Accuray's subsequent remedial measures as to the accounting for

25  the camera detectors inventories support a finding that Plaintiff was engaging in protected activity.

26  _____

27  [7] In light of Plaintiff's concession and the overwhelming record evidence that Plaintiff was on the termination trajectory before engaging in any activity protected by Title VII, the expert testimony of Dr. Revelle, to which Accuray objects, would not raise a genuine factual issue as to pretext.

28  Accordingly, the Court need not reach Accuray's evidentiary objection.

Case No.: 11-CV-01644-LHK
ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

Opp'n 19.  Plaintiff also asserts that Plaintiff's supervisors were made aware of Plaintiff's complaints to the SEC.  Opp'n 10-11, 21-22.  For the reasons explained below, the Court finds that Plaintiff has failed to raise a genuine factual issue as to the following elements of a SOX claim: (1) whether Plaintiff's SEC complaint was a contributing factor to Plaintiff's termination; and (2) whether anyone at Accuray with supervisory authority over Plaintiff was made aware of Plaintiff's SEC complaint.

SOX grants "whistleblower" protection to employees of publicly traded companies by prohibiting employers from retaliating against employees for reporting certain potentially unlawful conduct.  18 U.S.C. § 1514A.  The whistleblower-protection provision provides, in relevant part: "No [publicly traded company], or any officer, employee, contractor, subcontractor, or agent of such company, may discharge, demote, suspend, threaten, harass, or in any other manner discriminate against an employee in the terms and conditions of employment because of any lawful act done by the employee . . . to provide information . . . regarding any conduct which the employee reasonably believes constitutes a violation of . . . 1348 [securities fraud], any rule or regulation of the [SEC], or any provision of Federal law relating to fraud against shareholders, when the information . . . is provided to . . . a person with supervisory authority over the employee . . . ."  *Id.* § 1514A(a)(1)(C); *see also Coppinger-Martin v. Solis*, 627 F.3d 745, 748-49 (9th Cir. 2010).

To prove a prima facie case, a plaintiff must show that: "(a) "[t]he employee engaged in a protected activity or conduct"; (b) "[t]he named person [with supervisory authority over the employee] knew or suspected, actually or constructively, that the employee engaged in the protected activity"; (c) "[t]he employee suffered an unfavorable personnel action"; and (d) "[t]he circumstances were sufficient to raise the inference that the protected activity was a contributing factor in the unfavorable action."  *Van Asdale*, 577 F.3d at 996 (citing 29 C.F.R. § 1980.104(b)(1)(i)-(iv)).  Once a plaintiff makes out a prima facie case, "the employer assumes the burden of demonstrating by clear and convincing evidence that it would have taken the same adverse employment action in the absence of the plaintiff's protected activity."  *Id.*

Case No.: 11-CV-01644-LHK
ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

1    Plaintiff claims that his protected activity under SOX began when he complained that

2    Accuray retained an inventory of defective camera detectors, listed this inventory on its books, and

3    thereby "reported million [sic] of dollars in inflated assets."  Opp'n 8-9.  Plaintiff claims that his

4    protected activity under SOX began on April 11, 2008.  Opp'n 23 (citing Ex. 37.14).  However,

5    Exhibit 37.14 does not mention the defective camera detector inventory.  Moreover, Exhibit 37.14

6    shows only that Accuray HR Personnel had generally discussed SOX whistleblower protection

7    with Plaintiff, and does not show that Plaintiff reasonably believed that keeping a defective camera

8    detector inventory violated any securities law or regulation, or that Plaintiff expressed such a belief

9    to Accuray.  Similarly, Exhibit 22, an email chain between Plaintiff and Mr. Yuliano, does not

10   mention the defective camera detector inventory.  Exhibit 22 merely shows that Plaintiff was

11   interested in learning more about SOX compliance at Accuray; it does not amount to a protected

12   complaint under SOX.  It is undisputed, however, that Plaintiff made a complaint to the SEC on

13   September 19, 2008.  McMahon Decl. A (Boyd Dep. 199:9-13).  Thus, the Court finds that

14   Plaintiff engaged in protected activity on September 19, 2008.

15   As Plaintiff concedes, the decision to terminate Plaintiff had already been made on

16   September 10, 2008.  Tr. 40:1.  The evidentiary record does not show any activity protected under

17   SOX occurring before September 19, 2008.  Moreover, as discussed above, Plaintiff conceded that

18   Plaintiff was on the termination track as early as August 2007.  Thus, these circumstances do not

19   raise a reasonable inference that Plaintiff's protected activity under SOX, even if it began in April

20   2008, was a contributory factor to Plaintiff's termination.  *Van Asdale*, 577 F.3d at 996.

21   Accordingly, Plaintiff's SOX retaliation claim fails.  *Id.*

22   Plaintiff also fails to show that anyone with supervisory authority over Plaintiff "knew or

23   suspected, actually or constructively, that the [Plaintiff] engaged in the protected activity."  *Id.*[8]

24   According to Plaintiff's own testimony, he did not inform HR about his September 19, 2008 SEC

25   complaint.  McMahon Decl. Ex. A (Boyd Dep. 205:4-9).  Accuray cites evidence that none of

---

[8] To the extent Plaintiff seeks to rely on the "cat's paw" theory of liability, Plaintiff has submitted
no evidence to support this theory.  Under the cat's paw theory, Plaintiff must establish that one of
Accuray's subordinates, in response to Plaintiff's protected activity, "set[] in motion" Plaintiff's
termination, and that the subordinate "influenced or was involved in the decision or decision-
making process."  *Cafasso*, 647 F.3d at 1060.

19

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1    Plaintiff's supervisors or individuals involved in his termination were aware of Plaintiff's SEC

2    complaint.  Zografos Decl. ¶ 26; Scott Decl. ¶ 19; McMahon Decl. Ex. B (Strunk Dep. 28:2-5,

3    43:11-13).  In response, Plaintiff merely states, without any citation, that: "Clearly, the persons

4    involved in the decisionmaking process – Scott Zografos, Strunk, Hillberry, Dadone and Hall –

5    were all made aware in one way or another of these complaints by Plaintiff, either directly or

6    because of internal reporting and copying of each other in chain emails."  Opp'n 21-22.  Plaintiff

7    cites Exhibit 37.14 to support the proposition that "Ms. Hillbery acknowledge[d] Plaintiff's SOX

8    complaints and rights on April 11, 2008," even though "no formal SEC complaint" had yet been

9    made.  Opp'n 23.  However, as discussed above, Exhibit 37 does not support this proposition.

10   Finally, Plaintiff cites fourteen exhibits to support the allegation that Plaintiff's supervisors were

11   aware of Plaintiff's SEC complaint.  Opp'n 11 (citing Exs. 33, 47, 48, 49, 50, 37, 49, 70, 71, 72,

12   90, 91, 92, 128).  The Court has reviewed these exhibits and finds that none of them supports the

13   inference that any of Plaintiff's supervisors was aware of Plaintiff's SEC complaint, and thus was

14   aware that Plaintiff had engaged in protected activity under SOX.  The mere fact that Accuray

15   corrected its accounting for the defective camera inventory in response to allegations by Mr.

16   Zografos on October 14, 2008, does not show that Plaintiff's supervisors were aware that Plaintiff

17   thought that the accounting violated any securities law or regulation before the decision to

18   terminate Plaintiff was made on September 10, 2008, or any time thereafter.  *See* Opp'n 9 (citing

19   Ex. 50.10).  Thus, Plaintiff has failed to raise a genuine factual issue as to Plaintiff's supervisors'

20   knowledge of Plaintiff's protected activity under SOX, a necessary element of a SOX retaliation

21   claim.

22          In summary, Plaintiff has failed to raise a genuine factual issue as to: (1) whether Plaintiff's

23   protected activity under SOX contributed to his termination; and (2) whether Plaintiff's supervisors

24   knew of Plaintiff's protected activity.  Accordingly, Accuray's motion as to Plaintiff's SOX

25   retaliation claim is GRANTED.

26   **IV.    CONCLUSION**

27          For the foregoing reasons, Defendant's motion for summary judgment is GRANTED.  The

28   Clerk shall enter judgment in favor of Defendant per this Order and close the file.

Case No.: 11-CV-01644-LHK
ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

**IT IS SO ORDERED.**

Dated: June 4, 2012

*Lucy H. Koh*

LUCY H. KOH
United States District Judge

Case No.: 11-CV-01644-LHK
ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California